JAMES MITCHELL *v.* JOHN B. HOCKETT AND JAMES J. DICKENSON.

EVIDENCE OF SATISFACTION OF EXECUTION.—The return of a Sheriff, indorsed on an execution placed in his hands for collection, that the execution is satisfied by promissory notes received for the amount due on it, is not evidence of the satisfaction of the judgment on which it was issued, nor can it be admitted in evidence as tending to prove a satisfaction of the same.

SATISFACTION OF EXECUTION BY NOTES.—The plaintiff in an execution may accept

Mitchell *v.* Hockett *et al.*

of promissory notes by a special agreement, as an absolute payment of the same, but the agreement must be proved by testimony other than the Sheriff's certificate.

SALE OF A JUDGMENT.—In the purchase of a judgment the rule of *caveat emptor* applies, so far as third parties are concerned, in the same manner as in the purchase of any other personal property. If the assignor has no title, the purchaser will take none, whether he have notice of a former sale or not.

SEAL.—It is not necessary that the assignment of a judgment should be under seal.

SATISFACTION OF JUDGMENT.—If the defendant in a judgment delivers to the plaintiff therein a promissory note of third parties in satisfaction of the same, which is void because fraudulently obtained by defendant from the payors, it is not necessary for the plaintiff to return the note before enforcing his judgment by execution.

SPECIAL ISSUES WITHDRAWN FROM A JURY.—Where special issues are submitted to a jury, and they announce that they cannot agree upon the special issues, but can agree upon a general verdict, and by consent of counsel on both sides the special issues are withdrawn and a general verdict received by the Court, no error is committed.

APPEAL from the District Court, Thirteenth Judicial District, Stanislaus County.

In 1854, Mitchell, the plaintiff, recovered a judgment against Jacob H. Gardenhire, and on the same day assigned it to Terry & Perley by an assignment in writing, which was deposited with the Clerk of the Court. In 1856 Mitchell took out execution on the judgment, and placed the same in the hands of Kirk, the Sheriff, who levied on property claimed by a son of Gardenhire. Mitchell and four others indemnified the Sheriff, and he sold the property. Gardenhire's son sued the Sheriff and Hockett and Dickenson, appellants here, who were his official bondsman, for taking the property, and recovered judgment. The judgment was collected from Hockett and Dickenson, and to protect them the Sheriff assigned to them the indemnifying bond which he had received from Mitchell and others. H. & D. then sued Mitchell on the indemnifying bond, and recovered judgment for six hundred and seventy dollars and thirty-two cents costs, and issued execution on the same, and the Sheriff levied on Mitchell's property. Mitchell then issued a second execution on his judgment against Gardenhire, and caused a levy to be made on property, when Gardenhire's son and one Martin gave Mitchell their note for the amount due on the judgment against Gardenhire, and the levy was released. Martin and young Gar-

denhire claimed that Mitchell agreed to assign them the judgment in consideration of the note.   Mitchell assigned the note to Hockett and Dickenson, and the Sheriff released the property levied on, and returned their execution against Mitchell with the indorsement mentioned in the opinion of the Court. Hockett and Dickenson sued young Gardenhire and Martin on the note, and they interposed a defense that Mitchell did not own the judgment for which it was given, and had obtained it by fraud, etc., and defeated H. & D. in the suit.   Hockett and Dickenson then caused another execution to be issued on their judgment against Mitchell, and the Sheriff levied on Mitchell's property.   Mitchell then commenced the present action to enjoin the sale of his property, and further proceedings on the judgment, on the ground that the judgment had been paid.

The third instruction referred to in the opinion of the Court was as follows :

" That if the jury believe from the evidence that Hockett and Dickenson received the note of Martin and Gardenhire from Mitchell in satisfaction of their judgment against him, then that they had no right again to enforce execution on said judgment until they had returned said note to Mitchell ; or, in other words, they must place Mitchell in the same position he was in at the time they received the note."

Plaintiff recovered judgment in the Court below, and defendants appealed.

The other facts are stated in the opinion of the Court.

*L. Quint,* for Appellants.

The Sheriff had no authority to discharge or satisfy the execution, much less the judgment, by returning it satisfied, unless he proceeded and executed it in due process of law.

The taking of a negotiable promissory note, receiving it as payment, and returning the execution satisfied, would not operate as a discharge of the execution, even though the defendant pay subsequently such note to third parties to whom

Mitchell *v.* Hockett *et al.*

it had been assigned. (*Bank of Orange County* v. *Wakeman*, 7 Cow. 46 ; *Hart* v. *Waterhouse*, 1 Mass. 433.)

Taking the promissory note of a third party, or even of the party himself, for a pre-existing debt, does not extinguish the debt, unless it be so expressly stipulated. (*Ramsdell* v. *Percival*, 12 Pick. 126 ; *Wilkins* v. *Hill*, 8 Ib. 522 ; *Pomeroy* v. *Rime*, 16 Ib. 22 ; *Greenwood* v. *Curtes*, 4 Mass. 93 ; *Thompson* v. *Bills*, 4 Ib. 192–194 ; *Cole* v. *Sackett*, 1 Hall, 516 ; *Griffith* v. *Grogan et al.*, 12 Cal. 317.)

A judgment with reference to its assignable qualities is a *chose in action*, and may be assigned by an instrument in writing, without being under seal; or even a parol assignment is good. (*Ford* v. *Stuart*, 19 Johns. 342 ; *Allen* v. *Holden*, 9 Mass. 133 ; *Brown* v. *The P. D. Co.*, 11 Mass. 152 ; *Dunn* v. *Snell et als.*, 15 Mass. 481 ; *Crandall* v. *Blen*, 13 Cal. 15.)

*S. Heydenfeldt*, and *Dwinelle & Shafter*, for Respondent.

The second alleged error is in allowing improper testimony, to wit : " the return of the Sheriff upon the execution marked ' C' to show satisfaction of the same.".

Respondent upon this point does not contest the soundness of the principles and authorities cited in appellant's brief, but holds them totally inapplicable to the facts in this case.

The plaintiff in an execution certainly has the moral and legal right to accept satisfaction of the same in any substance and in any manner he may deem proper, and his direction to the Sheriff to satisfy the execution must be controlling and conclusive.

If any doubt can be suggested as to the agency of the Sheriff to make the arrangement for the appellants, then it is insisted that their acts in receiving the note and bringing suit upon it was a ratification of the act ; they could not accept of the benefit of a part of the arrangement without submitting to the entire transaction ; and having endeavored to avail themselves of what was valuable, they must also submit to what is onerous, especially as the latter was the consideration for the former.

By the Court, SAWYER, J.

Plaintiff introduced in evidence an execution in the case of *Hockett et al.* v. *Mitchell*, and the return of the Sheriff indorsed thereon in the words following : " I return this execution satisfied by two notes of hand—one for ninety-one dollars and seventy-two cents, and the other, six hundred and fifty dollars, making in all seven hundred and forty-one dollars and seventy-two cents—and the above property is released.    July 20, 1857."

The object was to prove the satisfaction of the judgment—the main issue in the case.    The defendants objected to the introduction of the return, on the ground that it was improper evidence to prove satisfaction of the judgment.    The objection was overruled and defendants excepted.

If this return contained any element entitled to be considered, which tended to prove satisfaction of the judgment, it was admissible.    But we think it does not.    The officer, by virtue of his office, had no authority to accept notes in satisfaction of the judgment, and no authority to certify any other act than one performed in the proper exercise of his powers. The judgment creditor may, undoubtedly, by an express agreement, receive a promissory note in satisfaction of a judgment, or any other antecedent debt.    But it must be by an express agreement.    " It is a rule well settled    *    *    *    that taking a note, either of a debtor or of a third person, for a pre-existing debt, is no payment, unless it be expressly agreed to take the note in payment, and run the risk of its being paid ; or unless the creditor parts with the note, or is guilty of *laches* in not presenting it for payment in due time.    *    *    *    It only postpones the time of payment of the old debt until a default be made in the payment of the note."    (*Toby* v. *Barlow,* 5 John. 68 ; *Griffith* v. *Grogan,* 12 Cal. 322.)

If there was any satisfaction of the judgment and execution, it was by an acceptance of the notes referred to in the return by the plaintiff in the execution, under a special agreement to take the paper as absolute payment ; and it was necessary to

prove such acceptance and agreement by testimony other than the Sheriff's certificate. The Sheriff's certificate upon that point was no more entitled to be considered than the certificate of any other person. His return that it was satisfied in the particular manner specified, in effect amounts to nothing more, than a certificate that the plaintiff received the notes under a special agreement to accept them as an absolute payment and extinguishment of the debt, and in satisfaction of the judgment. The certificate being incompetent to prove these facts, it was error to admit it in evidence. As it was admitted, the jury must be presumed to have considered and given it weight in making up their verdict.

The defendants allege, and introduce testimony tending to prove, that the notes referred to in the Sheriff's return (being non-negotiable notes) were obtained by plaintiff by fraud practiced by him upon the makers, Martin and Gardenhire; that the consideration of the notes was the assignment to the makers of a judgment represented by plaintiff to be then held by him against J. H. Gardenhire—the father of one of the makers—when, in fact, the said plaintiff had, before the making of said notes, assigned said judgment to other parties; that at the time of the assignment to Martin and Gardenhire he did not own the judgment; and that there was, therefore, no consideration for the notes, and they were fraudulently obtained. There was testimony, also, tending to show that the first assignment of said judgment was made by a written instrument under seal, and filed among the records of the case on the day of its recovery. But it was claimed by plaintiff, that the testimony was insufficient to show that the instrument had a seal.

With reference to this testimony the Court, at the request of the plaintiff, and under objection and exception on the part of the defendants, gave the following instruction: "That an assignment of a judgment entered in a Court of record, in order to give notice to third parties, must be under seal and filed and entered in the Clerk's office where the judgment was entered. That if they believed from the evidence that no

such assignment was made by plaintiff, then that the plaintiff could enforce the collection of such judgment by execution, and that any settlement which he might make would be a full discharge of the defendants." This instruction, if it contains any principle proper to be stated to the jury, is so ambiguous that it must necessarily have confused and misled them. The first part of the instruction, as to "notice to third parties," seems to refer to the assignees of the judgment under the assignment made in consideration of the notes. Treating them as ⸜third parties purchasing the judgment, we are not aware of any rule of law that makes any notice, actual or constructive, necessary in order to prevent them from taking title by an assignment. If they buy a judgment, the rule of *caveat emptor*—so far as any interest acquired as against third parties is concerned—applies to them in the same manner as in the purchase of any other personal property. If the assignor has no title they will take none, whether they have notice or not. The latter part of the instruction referring to "any settlement" which "would be a full discharge of the defendants," must refer to some party different from the "third parties" mentioned in the first part of the instruction. If the judgment debtor should *pay* to his judgment creditor the amount of his judgment before notice of the assignment, he would be discharged. If it was intended to instruct as to any principle of law applicable to these different classes of parties, the instructions should have been presented in distinct propositions, and in such a manner that the jury could clearly comprehend the scope and purpose of the instructions, and be able to apply them intelligently to the testimony.

It is not necessary that an assignment of a judgment should be made under seal. (*Ford* v. *Stuart*, 19 John. R. 342.)

If the jury attempted to make anything at all out of this instruction, or attempted to apply it to the testimony, they must almost necessarily have been misled, and it was the leading instruction in the case.

The third instruction given at the request of the plaintiff, if correct in other respects, ignores the question of fraud in

obtaining the note and in inducing defendants to accept it. If the note was a nullity on account of any fraud perpetrated by Mitchell, as there is testimony tending to show, it would not be necessary for defendants to return it before enforcing their judgment by execution. Conceding such necessity when the transaction was made in good faith, still the acceptance of the note under such circumstances as is claimed by the defense to have been shown by the testimony would vitiate the agreement.

As was very proper in this class of cases, the cause was submitted to the jury upon special issues. It is very remarkable, when we consider the question submitted, that they could not agree upon the special issues but did agree upon a general verdict. But counsel, before the verdict was announced upon the statement of the jury that they could not agree upon the special issues, consented to receive the general verdict, and there was no error in this.

There are many other points made which we do not consider it necessary to notice.

We think the judgment should be reversed and a new trial had, and it is so ordered.

Mr. Justice SHAFTER, having been of counsel, did not participate in the decision of this case.