[Sac. No. 1843.  In Bank.—February 11, 1913.]

HENRY J. WIDENMANN, Respondent, v. GEORGE WEN-IGER, as Treasurer of the County of Solano, Appellant.

PARTITION—PROCEEDS OF SALE—FUND IN HANDS OF REFEREE—RIGHT TO SHARE A CHOSE IN ACTION.—A referee in a partition suit, is not, as to the proceeds of the sale of lands involved in the action, a mere bailee of a special fund or the custodian of earmarked money belonging to the co-owners of the land. He is the custodian of funds held by him for the use of the co-owners according to their interests, to be paid when the precise amounts due should be determined. The only appropriate action which one of such co-owners or his agents, could maintain against the referee, or his successor, for the recovery of his share of the money when due, would be either an action of debt or for money had and received to the use of the plaintiff in the action. The claim for such money is a pure chose in action.

ID.—ASSIGNMENT OF FUND—RIGHT OF PRIORITY—PURCHASER AT EXE-CUTION SALE.—As between successive assignees in good faith and for value of such chose in action, the mere fact that the second assignee acquired title as a purchaser at an execution sale against the co-owner originally entitled to the share of the fund, does not of itself entitle him to priority over a prior assignee who took by an assignment directly from such co-owner.

ID.—NOTICE TO REFEREES OF ASSIGNMENT—PRIORITY OVER SUBSEQUENT PURCHASER AT EXECUTION SALE.—A prior assignee for value of such chose in action, who immediately gave notice of the assignment to the referees in partition, is entitled to priority over a subsequent purchaser at an execution sale against the assignor, who purchased without any notice of the prior assignment.

ID.—DUTY OF ASSIGNEE TO GIVE NOTICE TO DEBTOR.—An assignee of a chose in action must do everything toward having possession that the subject admits, and as between successive assignees thereof, he will have the preference who first gives notice to the debtor, even if he be a subsequent assignee, provided at the time of taking it he had no notice of the prior assignment.

ID.—TRANSFER OF FUND BY REFEREE—TRANSFEREE LIABLE TO PAY TO PERSONS ENTITLED—NOTICE OF ASSIGNMENT TO CUSTODIAN OF FUND.—The fact that subsequent to the reception of the notice of the first assignment by the referees in partition, and after the court had made its decree confirming the partition sale, and directing the referees to pay a specific part of the fund to the assignor, they transferred the fund to the custody of the clerk of the court, who in turn transferred it to the county treasurer, there being no order of court for such transfers, and that the fund was in possession of the treasurer at the time of the execution sale to the second assignee, did not change the rights and priorities of the respective assignees. The prior assignee was not required to give a new notice of his assignment to the treasurer, in order to preserve his right of priority as against a possible subsequent assignee of his assignor, and the treasurer, in accepting the fund as a mere volunteer, with knowledge of its source and character, and of the duty of its possessor to pay it over to the persons entitled, charged himself with the obligation to pay it to such persons.

ID.—FAILURE TO GIVE NEW NOTICE—LACHES—ESTOPPEL.—Even if it be conceded that a new notice should have been given by the first assignee upon information of the transfer of the fund, he was not guilty of laches nor estopped to dispute the legality of a payment by the treasurer to the purchaser at the execution sale, if he notified the treasurer of the fact of his prior assignment and presented his claim before the treasurer made such payment.

ID.—EX PARTE ORDER OF COURT IN PARTITION SUIT FOR PAYMENT OF FUND—CUSTODIAN NOT PROTECTED IN PAYMENT TO PERSON NOT ENTITLED.—Where such fund was not paid into court in the partition suit, and the action was not continued for its disposition, as provided in section 774 of the Code of Civil Procedure, the court in that suit, after its order confirming the sale and directing the distribution of the proceeds by the referees had become final, had no authority to do anything further except to settle the accounts of the referees after they had made the payments as previously directed; and its subsequent order therein, made in a proceeding instituted by the execution purchaser against the treasurer, to which the prior assignee was not a party and of which he had no notice, directing the treasurer to make payment of the share of the fund to the execution purchaser, was insufficient to protect the treasurer in making such payment.

ID.—DEMAND ON CUSTODIAN—SHOWING OF FUTILITY OF DEMAND.—A demand by the prior assignee on the treasurer was not a condition precedent to an action to recover of him the chose in action assigned, where it is manifest, from the fact that the complaint in said action was served prior to the payment to the execution purchaser, that the demand would have been refused.

APPEAL from an order of the Superior Court of Solano
County refusing a new trial. Henry C. Gesford, Judge presiding.

The facts are stated in the opinion of the court.

T. T. C. Gregory, Gaillard Stoney, and Orville C. Pratt,
Jr., for Appellant.

Theodore A. Bell, for Respondent.

SHAW, J.—The defendant appeals from an order denying
his motion for a new trial.

The plaintiff sued to recover the sum of $4,875 alleged to
belong to the plaintiff but which the defendant has in his possession and refuses to pay over to the plaintiff. The facts
are as follows: In a suit in partition, entitled Catherine Magee
et al., *v.* James Magee et al., pending in the superior court of
Solano County, a sale of the land was ordered and R. J. R.
Aden and two others were appointed as referees to make the
sale. The sale was conducted by Aden, who, on April 23,
1908, sold the land to Henry Widenmann, the plaintiff, for
ten thousand five hundred dollars, and received from him the
purchase money. Widenmann bought the property at the
instance of James Magee, who advanced to him one thousand
five hundred dollars for that purpose, and it was the understanding between them that after the purchase from the referee was consummated Weidenmann would resell the property
to Magee. On May 1, 1908, Widenmann agreed to sell the
land to Magee for ten thousand five hundred dollars and to
convey the same as soon as the partition sale was confirmed.
Magee owned one-half of the money realized on the partition
sale, less the costs. On May 2, 1908, Magee, in writing, duly
assigned to Widenmann all his interest in the partition money,
the understanding between them being that the same when
received was to be a part payment on the price of the sale
of the land by Widenmann to Magee. The partition money
was then in the hands of Aden, as referee, and Widenmann
immediately gave notice in writing to said referees, including
Aden, of his said assignment from Magee.

The referees afterward reported the partition sale to the court, and on August 6; 1908, the court made a decree confirming said sale, declaring the share of James Magee in the money to be $4,875 and directing the said referees to distribute and deliver said sum to Magee. It does not appear that the referees mentioned the assignment in their report or that it is referred to in the decree. The code provides that the referees shall make the distribution of funds in such cases when ordered by the court. (Code Civ. Proc., sec. 773.) Aden did not deliver the money to Magee or to Widenmann. He did deliver it to G. G. Halliday, the clerk of the court, but without any order or authority to do so. No order had been or ever was made for such money to be deposited in court or with the clerk. The money was handed to the clerk by Aden on or about August 13th and it was transferred by the clerk to Weniger, the defendant, on or about August 15, 1908. This also was without any order of court or other authority.

Certain evidence was offered and apparently rejected, from which it appears that on April 27, 1908, in another action in said court, Catherine Magee and others recovered judgment against James Magee for $4,877.82, that on August 18, 1908, an execution was issued on this judgment by the sheriff of said county, who on August 20, 1908, by virtue thereof, levied on the supposed interest of James Magee in the money then in the hands of Weniger, by serving on Weniger a notice of garnishment thereof, that Weniger answered to the effect that, as county treasurer, he was indebted to Magee in the sum of $4,875, and that the sheriff thereupon advertised and sold the interest of Magee to T. T. C. Gregory, said sale being made on August 26, 1908. These documents further showed that Weniger refused to pay the money to Gregory, that thereupon on August 28, 1908, Gregory filed a petition to the superior court in the partition suit, asking for an order directing Weniger, as treasurer, to pay to him said money, that the court thereon issued an order to show cause against Weniger, returnable August 31, 1908, that the matter was continued by consent until September 21, 1908, that Weniger and Gregory then appeared, the matter was heard and the court thereupon made an order directing Weniger to pay the money to Gregory, which he accordingly did.

No notice of this proceeding was given to Widenmann or to Magee, and neither one of them appeared at the hearing. The minutes recited that Magee was "present in open court" on August 31, when one of the continuances was had, but it is not otherwise shown that he appeared at the proceeding or had knowledge thereof. The present action was begun on September 19, 1908. On September 17, 1908, Weniger was informed of the assignment to Widenmann and was cautioned not to pay the money to any other person. It does not appear that he had any previous notice of the assignment. The summons and complaint in the action had been served on Weniger prior to the hearing of Gregory's petition on September 21st. Whether or not the court, at that hearing, was advised of the assignment, the notice to Weniger, or the pendency of the present action, does not appear. There is no evidence that Gregory had any notice of the assignment at the time of the execution sale on August 28th to him.

The plaintiff claims that he obtained a perfect right to the payment of the money by reason of the assignment from Magee to him and the notice thereof given by him to Aden, who was then the debtor, that this right was not affected or divested by the subsequent transfer of the fund, first to the clerk and then to Weniger, nor by the execution sale to Gregory, or the subsequent order of the court. The defendant claims that by the purchase at the execution sale, without notice of the assignment, Gregory acquired a title superior to that of Widenmann, and that, whether this was so or not, the order of the court directing payment to Gregory is binding and conclusive on Widenmann and all other interested parties.

It is contended that this action is in the nature of an action of replevin to recover specific moneys in the hands of the defendant. But this is not the case. The money was not identified nor was its amount ascertained at the time of the transfer. Aden was not the mere bailee of a specific fund or the custodian of earmarked money belonging to Magee. He was the custodian of funds held by him for the use of Magee and others, according to their interests, to be paid when the precise amounts due should be determined. The only appropriate action which Magee, or his agents, could maintain against Aden, or his successor, for the recovery of the money when

due, would have been either an action of debt or for money
had and received to the use of the plaintiff in the action. The
claim assigned was, therefore, a pure chose in action. These
propositions are settled by the following decisions: *Walling*
v. *Miller,* 15 Cal. 38; *Wendt* v. *Ross,* 33 Cal. 650; *Dunsmoor*
v. *Furstenfeldt,* 88 Cal. 522, [22 Am. St. Rep. 331, 12 L. R. A.
508, 26 Pac. 518].

The title acquired by Gregory under his purchase at the
execution sale was no better or worse than the title he would
have obtained if he had bought the claim privately from Ma-
gee without notice of the prior assignment. The execution
sale gave him no additional rights and, of itself, it transferred
to him only the title of Magee as it existed at the time of the
levy. (Code Civ. Proc., sec. 699.) If, by reason of his igno-
rance of the prior assignment, he thereby took a title superior
to that of Widenmann, this favorable situation comes from
the fact that he was an innocent purchaser for value, and not
from the fact that he bought at execution sale. There is no
distinction in this respect between an execution sale and an
ordinary sale. (*Mitchell* v. *Hockett,* 25 Cal. 544, [85 Am.
Dec. 155]; *Harris* v. *Harris,* 64 Cal. 108, [28 Pac. 63]; *South-
ard* v. *McBrown,* 63 Cal. 546.) The case of *West Coast etc.
Co.* v. *Wulff,* 133 Cal. 315, [85 Am. St. Rep. 171, 65 Pac. 622],
and similar cases, relating to the rights of second assignees of
corporation stock are cited by respondent on this point. They
do not apply to the case. They rest entirely upon the provi-
sion of section 324 of the Civil Code, declaring that a transfer
of such stock is invalid, except as to the parties thereto, unless
it is entered on the books of the corporation. They depend
upon the code provision and not upon the principle of the
common law. Gregory and Widenmann, therefore, with rela-
tion to each other, stand in the positions, respectively, of suc-
cessive assignees in good faith for value of the same chose in
action, from the original purchaser. The question presented
is which has the paramount title, under the facts shown.

The effect of such successive assignments and the rights of
the successive assignees without notice, with respect to each
other, were considered and decided in *Graham Paper Co.* v.
*Pembroke,* 124 Cal. 117, [17 Am. St. Rep. 26, 44 L. R. A. 632,
56 Pac. 627]. There is some conflict of authority on the sub-
ject but this court approved and followed the English rule

stated as follows: "As between successive assignees of a chose in action, he will have the preference who first gives notice to the debtor, even if he be a subsequent assignee, provided at the time of taking it he had no notice of a prior assignment." "In the case of a chose in action you must do everything toward having possession that the subject admits; you must do that which is tantamount to possession, by placing every person who has an equitable or legal interest in the matter under an obligation to treat it as your property. For this purpose you must give notice to the legal holder of the fund; in case of a debt, for instance, notice to the debtor is, for many purposes, tantamount to possession. If you omit to give that notice, you are guilty of the same degree and species of neglect as he who leaves a personal chattel, to which he has acquired title, in the actual possession and under the absolute control of another person."

It is suggested that the decision in *Curtin* v. *Kowalsky,* 145 Cal. 431, [78 Pac. 962], is contrary to the Graham case. This notion finds no support in the Curtin case. The rules governing the rights of successive assignees of the same chose in action were not involved in that case. Curtin was the first assignee, the second assignee was not a party to the action and there was nothing to show that he had given a prior notice nor was there any question in the case which made such notice material. The opinion expressly declares that "the rights of the second assignee are not involved and cannot be adjudged." We are at a loss to understand why the two cases are supposed to be in conflict. They discuss different rules, the parties stood in different relations, the facts are not the same and there is nothing in the opinion in the latter case that is inconsistent with the language of the former.

The result of the rule thus stated is that Widenmann's title to the demand was perfect at the time the execution was levied, and Magee then had no interest therein. Widenmann had obtained the assignment for a valuable consideration and had given notice thereof to Aden, the debtor, thus doing all that he could do toward taking possession. Gregory purchased Magee's title, only, and Magee having none, Gregory obtained none, unless some other fact in the case gives him the superior right.

The transfer of the fund to Weniger did not operate to change the rights and priorities of the respective claimants. The possession by Aden of the fund, a part of which belonged to Widenmann, made him, to that extent, the debtor of Widenmann. The transfer of this fund to Weniger carried with it the burden of the obligation attending its possession, the obligation to pay it over to the owner. He was, in effect, a volunteer. He accepted the money with knowledge of its source and character and of the duty of its possessor to pay it over to the persons entitled. The transfer to him made no change in the person entitled, nor in the rights of that person.

We can perceive no good reason for holding that Widenmann was required to give a new notice to Weniger of his assignment, in order to preserve his prior right to the obligation thus assumed by Weniger, as against a possible subsequent assignee of Magee. It does not appear that Widenmann was informed of the transfer of the fund to Weniger, until after the purchase by Gregory at the execution sale. He was informed of the transfer by Aden to Halliday but he was also informed by Halliday at the same time that he, Halliday, knew of the assignment from Aden to Widenmann. Consequently, no notice was necessary to hold Halliday liable, even if we concede that a new notice should have been given upon information of the transfer of the fund. So far as the question of laches or estoppel in favor of Weniger, arising from failure to notify Weniger, is concerned, Widenmann is completely exonerated by the fact that he gave such notice and presented his claim before Weniger paid the money to Gregory, and before the hearing upon which the court directed that payment, and so far as appears, immediately after he learned of the transfer to Weniger.

The conclusion from these considerations is that Widenmann's title to the chose in action, that is to the claim against Weniger, was superior to that acquired by Gregory at the execution sale.

The order of the court, made upon the petition of Gregory, was clearly insufficient to protect Weniger against the claims of Widenmann. The court had already made its final order in the partition suit, confirming the sale and directing the distribution of the proceeds by the referees (Code Civ. Proc., secs. 773, 785), no money had been paid into court and the

action was not continued thereafter for the disposition of any such money as provided in section 774 of the Code of Civil Procedure. The order had become final in that court. Nothing remained to be done by the court, except to settle the account of the referees after they had made the payments as previously directed. The money was not even *in custodia legis* so as to be exempt from execution. (*Dunsmoor* v. *Furstenfeldt,* 88 Cal. 522, [22 Am. St. Rep. 331, 12 L. R. A. 508, 26 Pac. 518] ; *Estate of Nerac,* 35 Cal. 397, [95 Am. Dec. 111].) The proceeding by Gregory had no place in or legal connection with the partition suit. Giving it the most favorable effect in his behalf, it was in the nature of an independent proceeding to determine the title to the fund, although entitled in the partition suit. Weniger was made a party to it and notice was given to him. But Widenmann was not made a party. He was given no notice and he did not appear. And, although Weniger then knew of Widenmann's claim and of his rights under the prior assignment he did not ask that the latter be made a party, or that he be given notice, but, to the contrary, submitted to and obeyed an order made by the court in the absence of Widenmann and destructive of his rights. In order to place himself in a position to rely upon any order made in that proceeding, Weniger should have himself notified Widenmann of the proceeding and he should have asked the court to make Widenmann a party thereto and have him brought in by notice to defend his rights. Failing in this the order cannot avail Weniger as a protection.

It follows from the foregoing that if the court had admitted the evidence which it rejected touching Gregory's acquisition of the title to the chose in action, it would not have established a title superior to that of plaintiff, and the refusal to admit the proffered evidence was without injury. Nor, under the circumstances here indicated, was a demand upon appellant necessary before the commencement of the action. It is manifest that the demand would have been refused, since, treating the complaint itself as a demand, and remembering that the complaint was served before payment over by the appellant of the fund, appellant still refused to recognize the assignee's rights. (*Parrott* v. *Byers,* 40 Cal. 622.)

The order denying a new trial is affirmed.

Angellotti, J., Sloss, J., Henshaw, J., Melvin, J., and Lorigan, J., concurred.