[Civ. No. 11883. Second Appellate District, Division One.—December 22, 1939.]

R. I. ROGERS, Respondent, v. TRANSAMERICA CORPORATION et al., Defendants; H. W. EVERTS, Appellant.

Cullinan, Hickey & Sweigert, Cullinan, Hickey & Cullinan and Cushing & Cushing for Appellant.

Oliver O. Clark, Henry Brown and David D. Sallee for Respondent.

John W. Preston and Joseph Scott, for Respondent, on petition for hearing in the Supreme Court.

DORAN, J.—On March 29, 1937, there was pending, and for some years prior thereto there had been pending, in the superior court at Los Angeles, an action numbered 359,898, in which R. I. Rogers was plaintiff and Transamerica Corporation, Bank of America National Trust and Savings Association and others were defendants. In that action R. I. Rogers claimed a large amount in damages which he alleged he had suffered by reason of certain frauds and misrepresentations made by or on behalf of the defendants.

On February 15, 1933, judgment was entered against R. I. Rogers in an action pending in the superior court at Los Angeles and numbered 350,894, in which Mortgage Guarantee Company, a corporation, and Security First National Bank of Los Angeles, a corporation, as trustee, were plaintiffs and R. I. Rogers was the defendant. This judgment was for $31,850.37. On March 20, 1937, there was due thereon $19,740.55 principal, together with interest for a long period, attorneys' fees, and costs.

On that date, March 20, 1937, a writ of execution was issued on said judgment and on March 22, 1937, the sheriff levied on all the right, title and interest of R. I. Rogers in and to the claims and demands for damages against Transamerica Corporation, Bank of America National Trust and Savings Association and the others who were defendants in said action No. 359,898 in which Rogers was the plaintiff. On March 29, 1937, the sheriff sold to H. W. Everts all the right, title and

interest of R. I. Rogers in and to all of the alleged claims and demands for damages against Transamerica Corporation, Bank of America National Trust and Savings Association and the others who were the defendants in action numbered 359,898.

R. I. Rogers was then, and for a long time had been, a defendant in another action in the superior court at Los Angeles, No. 367,575, in which the Bank of America National Trust and Savings Association was suing R. I. Rogers as defendant therein to recover on certain promissory notes which had been given by R. I. Rogers to the bank for money loaned. In an amended answer and counterclaim filed by R. I. Rogers in that action No. 367,575 and verified by Mr. Rogers on July 7, 1936, R. I. Rogers had pleaded against the bank's suit on the promissory notes the whole cause of action asserted by him in said action No. 359,898, thus asserting by his verified pleading in July, 1936, that he then owned, in his own right, the claims and causes of action which he was asserting in action No. 359,898. Also, in the same action, No. 367,575, Mr. Rogers, in his original answer and counterclaim, verified by him on February 10, 1936, alleged a counterclaim identical with the cause of action which is the subject of said action No. 359,898, so that on February 10, 1936, as well as on July 7, 1936, he had asserted, under oath, a claim inconsistent with the ownership by anyone but himself on those respective dates of the claims and causes of action which are the subject of action No. 359,898.

Prior to the date of the execution sale, no notice of any assignment by R. I. Rogers to his wife or to anyone else had been given to any of the defendants against whom he was asserting his claims in action No. 359,898, nor is it contended that Everts had any knowledge of any such assignment prior to the date of the execution sale. On the day of the execution sale and before the sale, the following matters occurred. At the time and place of the sale, after the sheriff had read the notice of sale and before offering such claims and demands for sale, the sheriff read aloud to the persons there assembled, of which H. W. Everts was one, a notice. The notice was signed by R. I. Rogers and Oliver O. Clark, the attorney for plaintiff in action No. 359,898. Inasmuch as the legal effect of the notice is decisive, it is herewith set forth in full.

"Notice as to Judgment Debtor's Lack of Interest in Subject Matter of Execution Lien Herein.

"To E. W. Biscailuz, Sheriff of the County of Los Angeles, State of California, and to L. M. Leonard, Deputy Sheriff of said County and State, and to the plaintiffs herein, and to any and every assignee and assignees of any plaintiff, or of the plaintiffs herein, and to Cullinan, Hickey & Sweigert, and to Cushing & Cushing, as attorneys for the plaintiff and judgment creditor herein, and to all other persons interested:

"You, and each of you, will please take notice that on March 22, 1937, there was served upon R. I. Rogers, judgment debtor herein, by the Sheriff of Los Angeles County, notice in writing that under and by virtue of a writ of execution heretofore issued in the above entitled action an execution levy had been made upon all of the rights, titles, interests and properties of said R. I. Rogers in and to each and every cause of action asserted by said R. I. Rogers against Transamerica Corporation, a corporation, and other defendants in that certain action entitled '*R. I. Rogers, Plaintiff*, v. *Transamerica Corporation, a corporation, et al., Defendants,*' being No. 359,898 now pending in the above entitled court, as well as upon all of the right, title, interest, equity and properties of said R. I. Rogers in and to the subject matter of each of said causes of action, and upon any right of action inhering in said R. I. Rogers upon each and every of said causes of action.

"You will please take notice that at the time of the issuance of said execution and at the time of the levy thereof, and for a long time prior thereto, the said R. I. Rogers was not the owner of any right, title. interest, equity or estate of any kind or nature in or to any of the causes of action set forth in said action No. 359,898 now pending in the above entitled court, and did not have any right, title, interest, equity or estate in or to any right of action upon each or any of said causes of action, and that long prior to the issuance of said writ of execution, and long prior to the levy thereof, said R. I. Rogers by assignments had sold, conveyed, transferred and set over unto others all of his right, title, interest, equity and estate in and to each and every of said causes of action and in and to each and every right of action upon each and every of said causes of action, and in and to all of the sub-

ject matter of each and every of said causes of action, and of each and every of said rights of action, and thereby had completely divested himself of any right, title, interest, equity or estate in or to the same.

"You are further notified that by reason of said assignments the lien of any levy under said writ of execution does not attach to any part or portion of any right, title, interest, equity or estate which, excepting for said assignments, said R. I. Rogers would have had in and to said causes of action and said rights of action.

"You will further take notice that by reason of the matters herein set forth any purchaser of any purported or ostensible interest of the said R. I. Rogers in or to any of said causes of action, or in or to any of said rights of action, or in or to any matter which is the subject of said causes of action, or of said rights of action, or of any thereof, will obtain nothing whatsoever by virtue of such purchase.

"Dated March 27th, 1937.

"(Signed) R. I. ROGERS.

"(Signed) OLIVER O. CLARK,

"Attorney for R. I. Rogers.

"Received copy of this answer at 8:45 a. m. March 29, 1937.

"(Signed) E. W. BISCAILUZ,

"Sheriff,

"(Signed by) J. S. MARKEY,

"Deputy."

The sale followed, and as heretofore noted, Mr. Everts purchased the property.

It should be emphasized that the above notice is signed by R. I. Rogers and his attorney, Oliver O. Clark. The name of the assignee, to whom the right, title and interest in the cause of action is supposed to have been assigned, is not revealed. Nor is there anything in the notice that asserts or discloses any authority in R. I. Rogers to act in the premises as the agent of the assignee, either actually or ostensibly. Nevertheless, it purports to declare the law that no lien of any levy under such levy would attach, and the threat that any purchaser at the sale would obtain nothing whatsoever by virtue of such purchase.

Immediately upon receiving the sheriff's certificate of sale, H. W. Everts, who it is admitted was at all times acting for and on behalf of Bank of America National Trust and Sav-

ings Association, notified all of the defendants in action numbered 359,898, that he had succeeded to the interests of R. I. Rogers in the claims which were the subject of the action. Later, to wit, on May 1, 1937, Everts served notice of a motion in action No. 359,898, to substitute himself as·plaintiff in said action in place and stead of R. I. Rogers, and to substitute his counsel as counsel for the plaintiff. At the hearing, the motion was urged on the ground that Everts had succeeded, by virtue of the sheriff's sale, to all of the right, title and interest of R. I. Rogers in and to the claims which R. I. Rogers was asserting in action numbered 359,898. R. I. Rogers opposed the motion on the ground that prior to the levy of the writ of execution issued in action numbered 350,-894, he had assigned to his wife, Estella Frances Rogers, all of his interest in those claims and demands, and that Everts had bought them at the sheriff's sale with constructive notice of such assignment. At the hearing on the motion the evidence in support thereof consisted of the affidavit of H. W. Everts, and certain records and files that were relevant and which contained the testimony of R. I. Rogers and his wife, given in supplementary proceedings, to which reference hereinafter will be made. Opposition to the motion was supported by the affidavits of R. I. Rogers, his wife, and their attorney, Oliver O. Clark.

The superior court denied the motion to substitute, from which order the appeal herein is taken.

In addition to the minute entry denying the motion, the trial judge filed a memorandum opinion which in part was as follows:

"As a matter of fact on the day before the execution sale, notice signed by plaintiff and by plaintiff's attorney was served upon the sheriff, and at the time of the execution sale, and before bids were received, the officer conducting the sale read to those present, including Everts, a copy of the notice and the copy was delivered to Everts, which notice recited that prior to the issuance of the execution Rogers had sold to others all of his right, title and interest in and to the cause of action in this case, and that any purchaser would take nothing by his purchase.

"Without reviewing the numerous authorities that have been cited in this case by counsel upon both sides, the Court is of the opinion that the notice given, while not given by

the prior assignee and not containing many of the essential facts relating to such assignment, was such that a prudent man would have thereby been put upon inquiry; that by prosecuting such inquiry he might readily have learned all the facts concerning said prior assignment, and that, therefore, he had constructive notice of the fact of such prior assignment (Section 19, Civil Code).''

The trial judge further observed that there was no reason to doubt the ''voluntary assignment for a sufficient consideration to Mrs. Rogers'' because it was supported by the testimony of the assignor and assignee, and was corroborated by the ''testimony of Mr. Rogers' attorney who drew the assignment, an officer of this Court of unquestioned integrity''.

The facts are undisputed.

It is submitted by appellant and uncontroverted by respondent that the question before the court on appeal is purely a matter of law: namely, the legal effect of the notice, read by the sheriff at the execution sale, in the light of the undisputed circumstances. In that connection it is contended by appellant that the so-called notice did not give Everts constructive notice of Mrs. Rogers' claim to the chose in action; that Everts was under no duty to postpone the sale or refrain from bidding by reason of the so-called notice; that Rogers' explanation of why he did not name his wife as assignee in the notice is evidently an afterthought and is not even plausible, and is no excuse for Mrs. Rogers' failure to notify the debtor or purchaser at the execution sale of the assignment to her; that Rogers and Mrs. Rogers and their counsel deliberately concealed the fact of the alleged assignment to Mrs. Rogers; and that the so-called notice was insufficient because of its generality and the tendency of such a notice to facilitate fraud.

Respondent contends to the contrary generally and specifically.

Before giving consideration to the merits of the appeal, propriety suggests that some attention be devoted to respondent's brief, which commences as follows:

''This appeal is from an order which declares that a scheme, devised by powerful interests to evade the just consequences of their gigantic fraud, has failed.'' Then follow about three pages of rhetoric calculated in substance, effect, and literally, to abuse appellant personally as well as to belittle the effort

of appellant in the adoption and application of a legal remedy, which effort on the part of appellant in the premises was entirely proper. This attack on appellant is based upon the assumption that the allegations of the complaint in action No. 359,898, referred to herein, are true, and despite the fact that said action, although filed on July 13, 1933, has never been brought to trial. Purporting, as it does, to be an argument it goes altogether outside of the record and is beside the issue. Its presence in the brief is pernicious, unwarranted and inexcusable, and scarcely is to be expected from one characterized by the trial judge as ''an officer of this Court of unquestioned integrity''.

The merits of the within appeal, as heretofore noted in substance, pertain to the legal effect to be given to the notice read at the execution sale, the determination of which necessarily involves the rights of assignees of a chose in action. In that connection the pertinent events, in chronological order, occurred as follows: The execution sale took place on March 29, 1937. On the same date, the so-called ''notice'' was read at the sale, by means of which R. I. Rogers informed prospective purchasers that he, R. I. Rogers, no longer was the owner of the chose in action which was the subject-matter of the sale. Everts disregarded the so-called ''notice'' and bid the property in for $5,000. Thereafter, and promptly, Everts notified all of the debtors that he, Everts, was the new owner. Thereafter, to wit, on May 24, 1937, Everts first learned, and it became known for the first time from testimony of R. I. Rogers given in supplementary proceedings, that R. I. Rogers claimed to have assigned the cause of action to his wife, Estella Rogers, on January 20, 1936. It should again be noted at this point that after this last-mentioned date, to wit, on February 10, 1936, and also on July 7, 1936, R. I. Rogers had declared under oath in a verified answer, his ownership of this same cause of action which he later (on May 24, 1937) declared under oath he had assigned for a valuable consideration to his wife on January 20, 1936. It is noteworthy that Rogers' explanation, also under oath, of this most significant and important circumstance is as follows:

''Q. (By Mr. Cullinan, attorney for appellant): You are testifying about action No. 359,898, in which you are the plaintiff against the bank and in which the cause of action was assigned to your wife, but the action I am calling to your

attention is quite a different action. That is the action in which the bank is suing you on the promissory notes, and you have already assigned to your wife your rights without reservation but, nevertheless, you have set up in this suit the bank brought against you on the promissory notes this claim as your own. Now, I am asking you if you can give me any explanation as to why you did that, in view of your previous testimony concerning the reason of the assignment to your wife and the character of it?

. . . . . . . . . . . . .

"The Witness: Well, the only answer I can give is that the papers in this suit were prepared by my attorney, Mr. Clark, and I read them over at the time, but a layman naturally can't understand all of this, and I accepted his word for it, and they were signed. That is all I can say.

"Q. (By Mr. Cullinan): Mr. Rogers, you have been a bank official for a good many years, have you not?

"A. I was, but I didn't go into the law.

"Q. And you held a high office in the bank, did you not?

"A. Yes.

"Q. You were aware when you signed this answer, were you not, that it was an answer to a complaint in which the bank was suing you on promissory notes?

"A. I probably was.

"Q. Now will you tell me in what respect you were protecting your wife's interests when you set up as a counterclaim to the bank's suit against you on the promissory notes, this cause of action which you have previously assigned to your wife and which was involved in another pending litigation in which you were the plaintiff?

"A. That would have to be a matter for my attorney, Mr. Clark, to answer. I wouldn't know how to answer it.

. . . . . . . . . . . . .

"Q. And is that the only explanation you are able to give, as to why, in July, you verified that counterclaim?

"A. It is."

It appears to be established law that as between successive assignees, the assignee who first gives notice to the debtor establishes a preferential title. As declared by the Supreme Court, "As between successive assignees of a chose in action, he will have the preference who first gives notice to the debtor, even if it be a subsequent assignee, provided at the time of

taking it he had *no* notice of a prior assignment." (*Widen-mann* v. *Weniger*, 164 Cal. 667, 673 [130 Pac. 421]. See, also, *Graham Paper Co.* v. *Pembroke*, 124 Cal. 117 [56 Pac. 627, 71 Am. St. Rep. 26, 44 L. R. A. 632].)

Respondent undertakes to apply the expression above quoted, namely, "provided at the time of taking it he had no notice of a prior assignment", to the circumstances here presented, contending that the so-called "notice" read at the sheriff's sale served such a purpose. The law cannot be so distorted. The notice read at the sheriff's sale was by the assignor, not the assignee. Its obvious purpose was to baffle rather than in good faith to enlighten. Appellant appropriately describes the notice as an instrument designed, not to inform a "prospective buyer of the prior rights of an assignee, but rather to intimidate prospective bidders at the sale while concealing the very facts that self-interest would impel an assignee acting in good faith to make known".

Respondent argues, with reference to the notice, that, "Everts deliberately chose to ignore the warning which this notice gave and to forbear any inquiry until after he had completed his purchase", and that "Ordinary prudence on Everts' part . . . required him to ascertain at his peril, before he purchased at the execution sale, to whom the assignment was made". Common sense would dictate no such requirement as the test of prudence, under the circumstances with which Everts was confronted. To the contrary, Everts appears to have adopted the course that "ordinary prudence" would suggest, namely, he avoided an obvious maneuver and proceeded with the sale.

Incidentally, in the circumstances attending the sale, of whom would a prudent man inquire? Rogers' so-called "notice" revealed nothing except the claim that he, Rogers, no longer owned the property. Of whom could a prudent man inquire except Rogers? And in the circumstances, what would any inquiry of Rogers be expected to have produced? Anything in addition to what the so-called "notice" had contained? Idle acts are not required.

Although relying upon the "notice", respondent at the same time argues that, "The motions denied by the order appealed from, rests upon an execution sale at which *nothing* was sold. *Rogers had no title* upon which the writ of execution could operate. . . . Consequently there was *nothing* to

which the execution could attach—*nothing* which the sheriff could sell—*nothing* which Everts could buy." (Italics included.) Thus Rogers, on the one hand, endeavors to dispossess himself of all title in and control over the property, and on the other hand endeavors to retain control over the outcome and effect of the sale of the same property by the sheriff.

The record reveals that Mrs. Rogers did nothing at any time to establish and protect her rights under the purported assignment. After the purported assignment, R. I. Rogers had no rights in the property assigned, and any action taken by him neither operated to establish nor did it defeat the respective rights of successive assignees. Obviously, therefore, the so-called "notice" read at the sheriff's sale, coming as it did from a stranger to the proceedings, was of no consequence, served no purpose as a notice or otherwise, actual or constructive, and operated neither to protect the asserted rights of Mrs. Rogers nor to defeat the rights of Mr. Everts thereafter perfected by service of due notice on the debtor.

The determination of the issue involved does not rest and depend upon the conduct of the assignor but upon the conduct of the assignees. In the absence of a conflict between or among assignees the mere assignment may be sufficient. But when, as here, successive assignees are contending, the performance or nonperformance of acts essential to a completion of title becomes the basis of their respective rights. Therefore, the finding by the trial judge that the assignment by Rogers to his wife was supported by a sufficient consideration was beside the issue and immaterial.

Finally, appellant's contention as to the insufficiency of the notice and the tendency of such a notice to facilitate fraud is of especial importance. As was declared in *Graham Paper Co.* v. *Pembroke, supra,* at page 121, "The defendant, Pembroke, is a purchaser, who not only took an assignment of the accounts and other choses in action, but obtained actual possession of them and immediately notified the debtors, and therefore obtained a perfect legal title without notice of the prior assignment, and with no means of obtaining information of it otherwise than from the fraudulent assignor." As contended by appellant in substance, to justify the maneuver relied upon by respondent would not only facilitate fraud, but moreover would encourage fraud. The attitude of the

courts toward fraud and as well toward that which clearly may be regarded as the temptation for fraud is too well established to require citation of authority.

The appellant herein, having proceeded entirely in accordance with the requirements of the law in every respect, as hereinbefore set out, was entitled to the relief sought. The order of the trial court in denying the motion of appellant to be substituted in the action was error.

For the reasons herein stated the order denying the motion of H. W. Everts, appellant, to be substituted, is reversed with directions to grant appellant's motion to be substituted and for the substitution of his attorneys named in the motion, as prayed.

York, P. J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 15, 1940, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 19, 1940. Edmonds, J., and Gibson, J., voted for a hearing.